1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  MYRNA U. PARAYNO,                           CASE NO. C09-487 MJP

11                     Plaintiff,               ORDER GRANTING
                                                DEFENDANT'S MOTION FOR
12        v.                                    SUMMARY JUDGMENT

13  JOHN E. POTTER,

14                     Defendant.

15

16         This matter comes before the Court on Defendant John E. Potter's motion for summary

17  judgment. (Dkt. No. 40.)  Having reviewed the motion, the response (Dkt. No. 44), the reply

18  (Dkt. No. 48), and all supporting papers, the Court GRANTS the motion for summary judgment.

19  The Court also GRANTS Plaintiff's motion to strike.

20                                      **Background**

21         Myrna Parayno is a Postal Service employee who pursues claims against the Postmaster

22  General, John Potter, for failure to accommodate her disability, for engaging in racial

23  discrimination, and for retaliation.  She has worked in various capacities in the Postal Service in

24  Washington since 1981.  (Parayno Decl. ¶ 2.)  Parayno suffers from fibromyalgia and a sleep

1   disorder.  (Parayno Decl. ¶ 4.)  She states that she is substantially limited in the major life

2   activity of sleeping.  (Dkt. No. 44 at 12-13.)  She was diagnosed in 2002 with fibromyalgia and

3   in 2005 with insomnia.  (Despreaux Dep. at 10.)  However, Parayno maintains she has suffered

4   from both conditions since 2000.  (Parayno Decl. ¶ 11.)  With work start time of 7:00 a.m., she

5   can obtain five to six hours of sleep.  (Id.)  Parayno has taken various medications to try to

6   control her insomnia and interrelated fibromyalgia since 2000.  (Id. ¶ 13.)

7          For roughly three years prior to the summer of 2007, Parayno had worked in the Seattle

8   Airport Mail Center with a start time of 7:00 a.m.  (Parayno Decl. ¶¶ 10, 14.)  She was able to

9   sleep five to six hours a night with a 7:00 a.m. start time.  (Id. ¶ 14.)  In June 2007, the Postal

10   Service abolished a number of positions at the Airport Mail Center and changed the shift hours

11   for employees, including Parayno.  (Stahman Decl. Ex. 9.)  On June 8, 2007, Parayno was

12   reassigned to a shift commencing from 4:00 a.m.  (Id.)  While she had previously been able to

13   sleep five to six hours a night with a 7:00 a.m. shift start, she was unable to sleep more than two

14   to three hours a night with the 4:00 a.m. start time.  (Parayno Decl. at ¶¶ 6-7.)  Parayno

15   developed insomnia and severe anxiety after four weeks of the early start time.  (Id. at ¶ 7.)

16   Parayno then started to use annual sick leave and leave without pay for three hours a day so that

17   she could start her shift at 7:00 a.m. instead of 4:00 a.m.  (Id. ¶ 8.)  She kept up this modification

18   until she obtained a new position on December 1, 2007.  (Id. ¶ 9.)

19          Parayno's doctor, Michele Despreaux, issued a recommendation that Parayno start no

20   earlier than 7:00 a.m. in order to accommodate her fibromyalgia and insomnia.  (Parayno Decl.

21   Ex. 2 at 17.)  Parayno submitted Dr. Despreaux's letter along with a request for accommodation

22   on July 6, 2007.  (Id. ¶ 15; Id. Ex. 2.)  On July 17, 2007, Kenn Messenger, the Airport Mail

23   Center Plant Manager, responded by stating that no job matching the one requested existed at the

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 2

1  Airport Mail Center.  (Parayno Decl. Ex. 4.)  He instead offered a position starting at 7 a.m. on

2  Bainbridge Island as a Sales, Services, Distribution Associate.  (Id.)  Messenger came up with

3  the Bainbridge position after looking at a number of other available jobs and picking the one that

4  best fit Parayno's restrictions.  (Stahman Decl. Ex. 13; 2008 Messenger Dep. at 37-45.)

5          On July 30, 2007, Parayno rejected this offer, stating that the commute would still force

6  her to wake up too early.  (Parayno Decl. ¶ 17)  On July 31, 2007, Messenger sent Parayno a

7  letter stating that her request was forwarded to the District' Reasonable Accommodation

8  Committee for review.  (Id.)  The Committee eventually denied the request, finding there to be

9  inadequate evidence of disability.  (Parayno Decl. ¶ 23.)  The Committee never acted on

10  Parayno's request to reconsider the decision.  (Id. ¶¶ 24-26.)

11          On August 1, 2007, Messenger verbally offered Parayno a position as a Window Clerk at

12  the Broadway Station in Seattle with a start time of 9:30 a.m.  (2008 Parayno Dep. at 77-78;

13  2008 Messenger Dep. at 40-41.)  Because Parayno was not qualified for this position, Messenger

14  offered her the necessary training.  (2008 Parayno Dep. at 80.)  Parayno rejected the job, and the

15  offer was never reduced to writing.  Parayno eventually applied for and received a bid position at

16  the Airport Mail Center with a start time of 6:00 a.m., which fit her doctor's amended restriction

17  which permitted this earlier start time.  (Stahman Decl. Ex. 14; Despreaux Dep. 24.)

18          On May 16, 2008 the Postal Service instituted yet another realignment at the Airport Mail

19  Center and abolished Parayno's position and assigned her to a new position with a 4:00 a.m. start

20  time.  (2010 Parayno Dep. at 124; Stahman Decl. Ex. 15.)  Parayno requested an accommodation

21  to start at 7:00 a.m., which was provisionally granted upon request.  (2010 Parayno Dep. at 59.)

22  Within a month for of the request, the permanent schedule change was approved.  (Id. at 141-

23

24

1  142.)  In February 2009, Parayno obtained a position at the Burien Station with a 7:00 a.m. start

2  time.  (<u>Id.</u> at 59.)

3        During her employment, Parayno has filed two EEO complaints relevant to the pending

4  matter.  In the first, dated September 26, 2007, Parayno complained that she was instructed not to

5  use time keeping form (Form 1260), whereas white and non-Filipino employees were allowed to

6  use the form.  (Stahman Decl. Ex. 17.)  She also complained that she was being denied

7  reasonable accommodations for a later start time.  (<u>Id.</u>)  It is unclear what happened with this

8  complaint.  She also filed a complaint on June 16, 2008, stating that she was retaliated against,

9  though the specifics are very slim.  (Stahman Decl. Ex. 19.)  The EEO Investigative Services

10  Office for the Postal Service dismissed her claim for retaliation and race/sex discrimination.  (<u>Id.</u>

11  Ex. 20.)

12                                   **Analysis**

13  A.   <u>Standard</u>

14        Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

15  admissions on file, and affidavits show that there are no genuine issues of material fact for trial

16  and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

17  Material facts are those "that might affect the outcome of the suit under the governing law."

18  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The underlying facts are viewed in

19  the light most favorable to the party opposing the motion.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>

20  <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The party moving for summary judgment has the burden

21  to show initially the absence of a genuine issue concerning any material fact.  <u>Adickes v. S.H.</u>

22  <u>Kress & Co.</u>, 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the

23  burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1  element essential to that party's case, and on which that party will bear the burden of proof at

2  trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

3  B.      Rehabilitation Act

4         Defendant argues that Parayno's Rehabilitation Act claim fails because she has not

5  established that she is "disabled" under the Act.  The Court agrees.

6         "The standards used to determine whether an act of discrimination violated the

7  Rehabilitation Act are the same standards applied under the Americans with Disabilities Act

8  ('ADA')."  Coons v. Sec. of United States Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004)

9  (citing 29 U.S.C. § 794(d); 29 C.F.R. § 1614.203(b); McLean v. Runyon, 222 F.3d 1150, 1153

10  (9th Cir. 2000)).  Under the ADA, an individual is disabled if she: (1) has a physical or mental

11  impairment that substantially limits one or more of the individual's major life activities; (2) has a

12  record of such an impairment; or (3) is regarded as having such an impairment.  Those who are

13  disabled are entitled to a reasonable accommodation at work to ensure the person can continue to

14  work.

15         Parayno contends that she is impaired only in the major life activity of sleep by virtue of

16  her insomnia and fibromyalgia.  (Dkt. No. 44 at 12-13.)  Sleep is a major life activity.  Head v.

17  Glacier Northwest Inc., 413 F.3d 1053, 1060 (9th Cir. 2005).  Parayno does not argue she is

18  impaired in the major life activity of work.  She does provide evidence that she suffers from

19  insomnia that is affected, in part, by the start time of her job.  The question posed is whether she

20  is "substantially limited" in the activity of sleeping.

21         The Court is to consider several factors in determining whether an individual is

22  "substantially limited" in a major life activity: (1) the nature and severity of the impairment; (2)

23  the duration or expected duration of the impairment; and (3) the permanent or long-term impact

24

1    of the impairment.  29 C.F.R. § 1630.2(j)(2).  A substantial limitation is one that shows Parayno

2    is "unable to perform a major life activity that the average person in the general population can

3    perform" or that she is "[s]ignificantly restricted as to the condition, manner or duration under

4    which [she] . . . can perform a particular major life activity as compared to the condition,

5    manner, or duration under which the average person in the general population can perform that

6    same major life activity."

7         Parayno is not substantially limited in the major life activity of sleep.  Parayno's

8    fibromyalgia and insomnia prompted her doctor to impose a limitation that she start work no

9    earlier than 7 a.m. (although this changed to 6 a.m. on November 20, 2007 and reverted back to 7

10   a.m. on July 8, 2008).  (Parayno Decl. Ex. 2 at 17; Dkt. No. 41-1- at 21, 23.)  Her insomnia

11   appears to be controlled with a later start time and, to some extent, medication.  That her job

12   exacerbates her insomnia is not evidence of a substantial limitation on sleeping that rises to the

13   level of a disability.  She is able to enjoy the life activity of sleep with a small change in her start

14   time.  There is inadequate evidence that she is substantially limited in the life activity of sleep.

15   As the Seventh Circuit has held "[i]f a job keeps [an employee] awake, and in turn causes some

16   sort of sleep deficit disorder, it is pretty obvious that the job is the problem, not that the

17   [employee] is disabled."  Baulos v. Roadway Express, Inc., 139 F.3d 1147, 1153 (7th Cir. 1998).

18        The Court therefore finds that Parayno has failed to demonstrate that she is disabled

19   under the Rehabilitation Act.  The Court GRANTS summary judgment in favor of Defendant on

20   this claim.

21   C.    Race Discrimination: Disparate Treatment

22

23

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 6

1    Defendant seeks dismissal of Parayno's claim of discrimination (disparate treatment)

2    claim.  Parayno fails to show that anyone similarly situated was treated differently with regard to

3    accommodation and other related issues.

4    Title VII makes it unlawful for an employer to "discriminate against any individual with

5    respect to his compensation, terms, conditions, or privileges of employment, because of such

6    individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). To make out a claim for race discrimination

7    under a disparate treatment theory, the plaintiff must show: (1) she belongs to a protected class;

8    (2) she was performing according to her employer's legitimate expectations; (3) she was subject

9    to an adverse employment action; and (4) similarly situated individuals outside her protected

10   class were treated more favorably.  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028

11   (9th Cir. 2006).  If the plaintiff meets these marks, the burden shifts to the defendant to establish

12   a "legitimate, nondiscriminatory reason" for the alleged action.  Id.  If the defendant is

13   successful, the presumption of discrimination disappears and burden shifts back to the plaintiff to

14   establish discrimination or a dispute of fact related thereto.

15   There are two methods by which a disparate treatment plaintiff can meet the standard of

16   proof required by Fed. R. Civ. P. 56(c).  First, a disparate treatment plaintiff may offer evidence,

17   direct or circumstantial, "that a discriminatory reason more likely motivated the employer" to

18   make the challenged employment decision.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S.

19   248, 256 (1981). Second, a disparate treatment plaintiff may alternatively offer evidence "that

20   the employer's proffered explanation is unworthy of credence."  Id.  This method often allows a

21   plaintiff to defeat a defendant's motion for summary judgment by offering proof that the

22   employer's legitimate, nondiscriminatory reason is actually a pretext for racial discrimination.

23   Cornwell, 439 F.3d at 1028.

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 7

1   Parayno's claim that she was treated differently from similarly situated Caucasian

2   employees who made accommodation requests is flawed.  As the Court holds, Parayno is not

3   disabled under the Rehabilitation Act and was not entitled to a reasonable accommodation.  Even

4   assuming she was entitled to a reasonable accommodation, Parayno fails to show that she was

5   treated differently from other similarly situated individuals.  Parayno does not provide any

6   particular analysis of those persons she claims are similarly situated.  Instead, the government

7   explains that of the ten individuals Parayno highlights, only two requested shift changes, as

8   Parayno did.  (Sykes Decl. ¶ 4(a).)  One of these two was a mail handler and neither one worked

9   in the same facility as Parayno or had the same supervisor.  (Id. ¶ 4(a).)  The second employee

10  had different responsibilities and was subject to a different supervisory structure.  (Id.)  Parayno

11  has failed to show that she is similarly situated to any person for purposes of pursuing a disparate

12  treatment claim, even assuming she was entitled to a reasonable accommodation.

13      Parayno also states that she was discriminated when denied the use of Form 1260 to

14  record time when the punch-clock was unavailable.  (Parayno Decl. ¶ 30.)  There is nothing

15  showing that this has any relation to racial bias or discrimination.  She has not pointed to any

16  similarly situated persons who were treated differently with regard to this form.  The Court

17  rejects this claim and GRANTS the motion for summary judgment on this issue.

18  D.      Retaliation

19      Parayno argues that Messenger retaliated against her because she filed EEO complaints.

20  (Dkt. No. 44 at 19.)  The claim fails in its merits.

21      Defendant first argues that Parayno failed to exhaust her retaliation claim.  "Each incident

22  of discrimination and each retaliatory adverse employment decision constitutes a separate

23  actionable 'unlawful employment practice.'"  Nat'l R. R. Passenger Corp. v. Morgan, 536 U.S

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 8

1   111, 114 (2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when

2   they are related to acts alleged in timely filed charges." Id. at 113.  There is one passing

3   reference to retaliation in Parayno's second EEO complaint, which satisfies Parayno's burden of

4   exhaustion.  (Dkt. No. 41-2 at 14.)

5        To sustain her retaliation claim, Parayno must show that she engaged in a protected

6   activity, her employer subjected her to an adverse action and that there is a causal link between

7   these two actions.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  An adverse action is

8   one that is "reasonably likely to deter employees from engaging in protected activity."   If

9   Parayno meets this burden, the government must produce a legitimate nondiscriminatory reason

10  for its decision.  If Defendant does so, Parayno must then demonstrate that the reason was a

11  pretext for retaliation.

12       Parayno argues she suffered several retaliatory acts: (1) she was denied a reasonable

13  accommodation for her disability; (2) she was denied an application for access to the Processing

14  and Distribution Center ("P&DC") in 2008, while others who had not filed EEO complaints had

15  such access; (3) refusing to allow her use of the Form 1260, while others who didn't complaint to

16  the EEO could; and (4) she received threatening letters.

17       There is no support for any of these claims.  First, as explained above, Parayno was not

18  entitled to a reasonable accommodation because she is not disabled.  Second, Parayno has failed

19  to explain or point to evidence as to how she was discriminated with regard to the PD&C in

20  2008.  Third, while Parayno complained about being denied use of the Form 1260 in an EEO

21  complaint, she provides no evidence that this was connected to any protected activity and why

22  this rises to the level of protected activity.  Fourth, Parayno has failed to point to any letter that

23  threatened her employment.  Two letters she received in 2007 regarding her request for

24

1    accommodation provide an alternative position and list as one of several possible choices that

2    she may instead resign.  (Parayno Decl. Exs. 4-5.)  The letters bear no mark of retaliation and

3    Parayno has failed to show their connection to her filing of either EEO complaint.  The Court

4    DISMISSES the claim.  There is no evidence of an adverse action related to Parayno engaging in

5    protected activity.

6          Parayno's best evidence of retaliation is testimony from Messenger that he thought she

7    abused the complaint process.  He testified: "I believe Ms. Parayno abuses the [EEO complaint]

8    process quite frequently so I don't have a lot of respect for her as an employee." (2010

9    Messenger Dep. at 73.)  He clarified that "I think she's a wonderful person, and I enjoy being

10   around her." (Id.)  He explained further that he found "her unwillingness to resolve issues

11   locally and simply, and in my opinion, reasonably, was less than satisfying." (Id. at 74-75.)

12   While this is evidence of Messenger's distaste for Parayno's use of the complaint process, it is

13   not sufficient to fill the gaps in Parayno's claims of retaliation (i.e., adverse actions and protected

14   activities).

15         The Court GRANTS summary judgment and DISMISSES Parayno's discrimination

16   claim.

17   E.    Motion to Strike

18         Parayno asks the Court to strike Defendant's references to Parayno's past employment

19   infractions that occurred between 11 to 20 years before she brought this action. (Dkt. No. 44 at

20   2.)  The Court agrees.  This information is irrelevant and needlessly inflammatory.  The Court

21   GRANTS the motion and strikes these references.

22   \\

23   \\

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

1

### Conclusion

2          The Court GRANTS Defendant's motion for summary judgment in full.  Parayno has

3   failed to demonstrate that she is disabled as required by the Rehabilitation Act.  She has failed to

4   produce any material facts to sustain her claim of disparate treatment on the basis of her race.

5   She has pointed to no adverse actions linked to her filing of an EEO complaint sufficient to

6   support her retaliation claim.  The Court GRANTS Parayno's motion to strike and does not

7   consider any facts related to her past employment infractions.

8          The clerk is ordered to provide copies of this order to all counsel.

9          Dated this 29th day of November, 2010.

10

11

12                                                     _____
                                                       Marsha J. Pechman
13                                                     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 11